BEVIS ET UX. *v.* HEFLIN ET AL.

63 129
149 143
149 552

GUARDIAN AND WARD.—*Sale of Ward's Real Estate.—Payment by Cancelling Guardian's Debt.*—A guardian, on making sale of his ward's real estate, has no right to receive from the purchaser, as a part of the purchase-money, his own promissory note or other individual obligation, held against him by the purchaser.

SAME.—*Action against Purchaser for Purchase-Money, or to set aside Sale.*— Where a guardian does receive such a payment, and fails to pay over the amount thereof in money, the ward may maintain an action against the purchaser, either for the purchase-money or to set aside such sale.

VOL. LXIII.—9

Bevis *et ux.* *v.* Heflin *et al.*

SAME.—Such a sale deprives the ward of no rights, so long as the property, or the proceeds thereof, can be traced in the hands of any one having full knowledge of all the equities.

SAME.—*Principal and Agent.—Sale by Agent.*—One who acts as the agent of another, in making a sale of real estate belonging to the principal, has no right to receive from the purchaser, as a part of the purchase-money, a discharge of an individual obligation held against him by the purchaser.

SAME.—*Applying Payment.—Presumption.*—A purchaser of real estate from one who makes the sale as the guardian of one, and as the agent of another, joint owner, and pays part of the purchase-money by surrendering and satisfying an obligation held by him against such guardian and agent individually, has no right to presume that such payment will be applied on the amount due to such principal and not on the amount due to the ward.

SAME.— *Husband and Wife.*—The fact that such contract of sale was made with the knowledge of the husband of such principal, who was also an infant, and that, by the terms of such contract, such obligation was to be applied as a payment upon the purchase-money due to the principal, does not make such payment valid.

SAME.—*Report of Sale by Guardian.*—The facts, that the residue of the purchase-money was paid in cash, and that the guardian reported the sale of the ward's real estate as made for cash, do not make such sale valid as against the ward.

SAME.—*Ratification of Sale by Ward.*—A recovery by the ward, against the guardian and his sureties, for the amount of such sale, constitutes, *prima faeie,* a ratification of the act of the guardian.

From the Bartholomew Circuit Court.

*F. T. Hord,* for appellants.

. *R. Hill,* for appellees.

NIBLACK, J.—This was an action by Catharine A. Bevis and her husband, Benton J. Bevis, against Kentley R. Heflin and William Stover.

The complaint shows, that, on the 10th day of December, 1867, the said William Stover was appointed guardian of the said Catharine, then Catharine A. Stover; that at the time of the appointment of the said William Stover as such guardian, the said Catharine was the owner in fee-simple of an undivided one-half of one-seventh of a certain quarter section of land in Bartholomew county; that, on the 14th day of September, 1869, the said Wil-

liam Stover, as such guardian, filed his petition in the common pleas court of Bartholomew county, and procured an order of said court, authorizing and directing him to sell the said Catharine's interest in said real estate; that, soon thereafter, the said guardian sold her said interest in said real estate to said Heflin, for the sum of nine hundred dollars, which said sale was in due time approved and confirmed by said common pleas court, and by its order a deed of conveyance was executed and delivered by the said guardian, to the said Heflin, for said real estate ; that the said Heflin never paid to said guardian the said purchase-money, or any part thereof, but the same remains due and wholly unpaid ; that, to cheat and defraud the said Catharine, said Stover, as aforesaid, and said Heflin entered into an agreement, whereby said Stover, as such guardian, was to accept and receive in settlement and payment of said purchase-money certain indebtedness due and owing by Stover personally to said Heflin and said guardian did attempt to settle and discharge said indebtedness thereby, and said Heflin paid no part of said purchase-money, but the same remains wholly unpaid ; that said money has been demanded and payment has been refused ; that Stover and the sureties given by said Stover on his bond in procuring the sale of said land are insolvent; that the said Catharine has intermarried with Benton J. Bevis, and demands judgment against Heflin for two thousand five hundred dollars, with a lien on said real estate for the payment thereof, or that said sale be cancelled, set aside and held for naught, and that she recover possession, with damages for the detention, of said real estate.

Heflin answered separately in three paragraphs :

1. In general denial.

" 2. That the said Catharine and her sister Esther A. were the owners in fee, as tenants in common, of one undivided seventh part of the north-east quarter of section

fourteen, in township ten north, of range five east, lying in said county of Bartholomew; that said Esther, being still under the age of twenty-one years, had intermarried with one Hayes H. Wynn, a person of full age; that both said Catharine and said Esther were the daughters of said William Stover, his co-defendant; that this defendant, being desirous of purchasing the said one-seventh interest of said Catharine and said Esther, proposed to said Stover, who, in that behalf, was then acting as agent for said Wynn and his said wife, that, if said Stover would secure to this defendant a perfect title to all said one-seventh part of said quarter section, this defendant would pay therefor the sum of eighteen hundred dollars, provided said Stover would arrange to take, as part of the purchase-money therefor, a note held by this defendant against said Stover for $509.70, with the accrued interest thereon, amounting in all to about $545.00; that said Stover fully acquainted said Hayes H. Wynn with said defendant's proposition, and thereafter, with the full knowledge and consent of said Wynn, said Stover accepted said proposition, upon condition that an order of the court could be obtained for the sale of said Catherine's interest in said real estate. And defendant says, that thereafter said Stover, upon proper application, did obtain such order of court, and sold the interest of said Esther, as agent for her and her said husband, and the interest of said Catherine, as her guardian, jointly, to said defendant, for said sum of eighteen hundred dollars; and this defendant paid therefor in cash the sum of, to wit, $1,255.00, and surrendered to said Stover said note amounting to, to wit, $545; and said Stover, to secure to this defendant the title to the interest of said Hayes H. Wynn and wife in and to the undivided half thereof, and that said Wynn and wife should execute to this defendant a good and sufficient deed of conveyance therefor, when said wife of said Wynn should arrive at the age

of twenty-one years, executed and delivered to this defendant a mortgage upon certain real estate therein described, for the sum of fifteen hundred dollars, conditioned that said Esther A. Wynn and Hayes H. Wynn should execute and deliver to this defendant a good and sufficient deed of conveyance to said interest of said Esther in the real estate above described, when said Esther should have arrived at the age of twenty-one years. And said Stover, as such guardian, reported to the proper court, that he had sold said interest of said Catherine for $900 cash in hand ; and thereafter, to wit, on the —— day of —————, 1870, said Stover, in his account current report, made to the proper court in the business of said guardianship, reported said sum of $900 as received by him and then in his hands. Defendant further says, that he had no notice or knowledge whatever that said Stover applied, or intended to apply, said amount of said note or any part thereof upon the purchase-money of said Catherine's portion of said real estate ; and he further says, that, at the time of making said contract, and at the final consummation of said trade, pursuant thereto, and for a long time, to wit, three years thereafter, the said Stover was entirely solvent and amply able to pay the amount of said note ; and he further says that said contract was made and carried into effect in the utmost good faith on his part, and without any intention whatever to defraud or wrong said plaintiff.

" 3. That, long after the sale of said Catherine's said interest in said real estate, as set forth in said complaint, and with full knowledge of all the facts in relation thereto, said plaintiff caused suit to be brought, in the name of the State of Indiana, in this court, on the bond given by said Stover as guardian of said Catherine, in which said suit said relators, the present plaintiffs, charged said defendant Stover with having received said $900.00 in cash, and with having failed to account therefor, and issues were formed

upon said complaint and such proceedings were had, that thereafter, to wit, on the 17th day of February, 1875, judgment of this court was rendered in favor of the State of Indiana, for the use and benefit of said plaintiffs in this action as relators in said action on said bond, for the sum of $1,235·25 damages, which said sum included said sum of $900.00, proceeds of said sale of said Catherine's interest in said real estate. Therefore defendant says said plaintiffs ought not to maintain said action."

Stover made no defence.

The plaintiffs demurred separately to the second and third paragraphs of Heflin's answer, but their demurrers were overruled.

They then replied in denial of the second paragraph, and to the third paragraph, that the said Catherine was a minor, under the age of twenty-one years, when suit was brought for her use against her said guardian and his sureties, and when judgment was obtained for her use against them; that, at the time, she had no knowledge of the terms of the sale of her said real estate to the said Heflin or that her said guardian had received his own note from the said Heflin in part payment of her said real estate, and did not obtain such knowledge until long after said judgment was recovered against said Stover and his sureties, and that the said guardian and his sureties were wholly insolvent.

The cause was tried by the court without a jury, and, upon a finding in favor of Heflin, judgment was rendered for the defendants.

It is well settled, that a guardian, upon a sale of his ward's property, can not receive anything but money in payment, that he can not receive his own note in payment for his ward's property, and that, if he shall attempt to do so, and shall afterward fail to account for and pay over in money the proceeds of such sale to his ward, the

ward may maintain an action against the purchaser for the purchase-money, or to set aside the sale. *Chandler* v. *Schoonover,* 14 Ind. 324; *Austin* v. *Willson's Ex'r,* 21 Ind. 252; *Wallace* v. *Brown,* 41 Ind. 436; *Talbott* v. *Dennis,* 1 Ind. 471; *Thomasson* v. *Brown,* 43 Ind. 203; *Sacia* v. *Berthoud,* 17 Barb. 15; *Fox* v. *Kerper,* 51 Ind. 148; *Petrie* v. *Clark,* 11 S. & R. 377.

It is also well settled, that, where a person knowingly receives from a trustee the trust property, in satisfaction of the individual debt of the trustee to him, such person must be regarded as participating in the fraudulent diversion of the trust property, and becomes liable to the beneficiary of the trust. *Wallace* v. *Brown, supra.* Also, that an abuse of a trust can confer no rights on the party abusing it, nor on those who claim in privity with him, and that such an abuse can deprive the *cestui que trust* of no rights, so long as the property, or its proceeds, can be traced and identified in the hands of those who have full knowledge of all the equities. Perry Trusts, sec. 835.

These legal propositions are not controverted by the appellees. It is only contended by them, that the rules of law thus laid down have no practical application to the facts set up in the second paragraph of Heflin's answer. They argue, that, as the payment to Stover by Heflin was a joint payment, that is, was for the use of both Mrs. Wynn and the ward of said Stover, Heflin had a right to expect that Stover would apply his individual note on the purchase-money due Mrs. Wynn, as the law did not permit him to apply it on the amount due his ward, upon the principle that it will be presumed, in the absence of notice to the contrary, that a trustee will do his duty in the management of the business of his trust.

They also cite authorities to show, that ordinarily the purchaser of trust property is not responsible for any misapplication of the purchase-money by the trustee.

The appellees, in their argument, lose sight of the fact that Stover was only the agent of Mrs. Wynn and her husband, and that, as such agent, he had no right to accept anything but money for his principals. Story Agency, section 98. Heflin was not, therefore, justified in relying upon the alleged presumption that Stover would apply his note on Mrs. Wynn's portion of the purchase-money, in the absence of any agreement that it should be so applied.

The authorities cited by the appellees, in regard to the non-responsibility of purchasers of trust property for the application of the purchase-money, have relation to purchases in which payments are made in money, and not to cases like the one in judgment where the alleged payment consists in a surrender merely of the individual note of the guardian, which can not be legally recognized as a payment at all for property sold by a guardian.

The facts set up in the second paragraph of Heflin's answer show that his offer to purchase was conditional upon Stover's agreeing to take up his note as a part of the purchase money, without any stipulation as to the fund upon which such note was to be applied. True, it is stated that the purchase by Heflin was with the full knowledge and consent of the husband of Mrs. Wynn, but it is not alleged that her said husband agreed that Stover's note should be applied on Mrs. Wynn's portion of the purchase-money. Hence it is not shown that Stover was authorized to receive anything but money for Mrs. Wynn's interest.

We are therefore of the opinion, that the allegations of the second paragraph of the answer did not relieve Heflin of the charge in the complaint as to his having voluntarily contributed to the devastation of the estate of Stover's ward, and that the court erred in overruling the appellant's demurrer to that paragraph.

The third paragraph of Heflin's answer, we think, set up a state of facts which, *prima facie*, amounted to a ratifi-

cation of the conduct of Stover as guardian, and hence we can not say that the court erred in overruling the demurrer to that paragraph. 2 Greenl. Evidence, sec. 66; *Wallace* v. *Morgan*, 23 Ind. 399.

But, for the ruling of the court on the second paragraph of the answer, the judgment will have to be reversed.

The judgment is reversed, with costs, and the cause remanded, with instructions to sustain the demurrer to the second paragraph of Heflin's answer, and for further proceedings.