CARL THOMAS, GUARDIAN, APPELLANT, V. FIRST NATIONAL BANK OF BAYARD ET AL., APPELLEES.

FILED DECEMBER 29, 1924. No. 23606.

Insane Persons: JUDGMENT: ENFORCEMENT. A judgment against an incompetent rendered after inquisition and appointment and qualification of a guardian of his person and estate cannot be enforced by the ordinary process of execution, but must be collected through the administration of the estate by the county court, or sale of the real estate, if necessary, under license of the district court.

APPEAL from the district court for Scotts Bluff county: J. LEONARD TEWELL, JUDGE. *Reversed, with directions.*

*George C. Porter* and *Mothersead & York*, for appellant.

*Morrow & Morrow, contra.*

Heard before MORRISSEY, C. J., DEAN and GOOD, JJ., REDICK and SHEPHERD, District Judges.

REDICK, District Judge.

Action to enjoin sale under execution of lands of an incompetent under guardianship. A preliminary injunction was allowed by the district court, but subsequently a demurrer to the petition was sustained and action dismissed, and the plaintiff, as guardian of the incompetent appeals.

Appellee, March 1, 1923, while the incompetent was under guardianship, recovered a judgment against him for $930, and the only question for determination is whether such judgment may be collected by ordinary execution or must be presented to the county court and collected through

the administration of the guardianship proceedings. The question is a new one in this jurisdiction, and depends very largely upon the construction of the statutes of this state concerning the appointment of guardians for incompetents. They provide generally for such appointment over the person and estate of the incompetent, require the giving of a bond, provide that the guardian shall manage the estate and pay the just debts of the ward out of his personal estate, and, if insufficient, by sale of his real estate upon procuring license therefor. He is required to apply the estate to the suitable maintenance and support of the ward and his family, and to file an inventory of all the property of the ward, and account for and dispose of the estate of his ward in like manner as is directed with respect to executors and administrators, as nearly as may be. No license to sell real estate may be granted without the approval in writing of the county board of the county. No provision is made for filing claims against the ward, and by other provisions in the statute an insane person may be sued on any claim, and it is the duty of his guardian to appear and defend, which was done in this case, resulting in the judgment above mentioned. Such judgment, therefore, is valid in every particular, and the question is how it shall be collected.

The underlying purpose of guardianship statutes is to preserve the estate for the support and benefit of the ward by protecting it from the improvident contracts of persons incompetent to manage their own affairs, and to place the estate within the control of the court acting through its properly appointed agents. The theory of the plaintiff is that upon appointment of the guardian the estate of the ward is *in custodia legis,* and is not subject to attachment or execution, as such processes are inconsistent with the purposes of the act and the authority of the court over the estate. It was so held in *Nolan v. Garrison,* 156 Mich. 397, and in *Sturgis v. Sturgis,* 51 Or. 10. Under statutes substantially the same as ours the latter court held:

" The personal or real estate of the ward can be con-

verted into cash only by proper proceedings under the direction of the county court. * * * This is the policy of the whole probate law with reference to estates of deceased persons, as well as to those under guardianship. Therefore, the enforcement of a judgment against the ward can be accomplished only through the county court, and not by process against either the ward's estate or the guardian."

We think these cases announce the correct principle, and there is nothing in conflict with this decision in *Spence v. Miner,* 90 Neb. 108, or *McAlister v. Lancaster County Bank,* 15 Neb. 295, cited by defendants. See, also, *McNees v. Thompson,* 5 Bush (Ky.) 686, holding that after inquisition the incompetent is civilly dead, and that statutes conferring power upon the court of chancery to license the sale of the incompetent's real estate supersede the ordinary process of execution; also *Wesley v. Wood,* 72 Misc. Rep. (N. Y.) 258, *Grant v. Humbert,* 114 App. Div. (N. Y.) 462, and *Saunders v. Mitchell,* 61 Miss. 321. That the real and personal estate of the ward is under the control of the court has been frequently held in this state, *Gentry v. Bearss,* 82 Neb. 787; *Hendrix v. Richards,* 57 Neb. 794; and *McCoy v. Lane,* 66 Neb. 847, in which the power of the court to allow claims was recognized.

Defendants cite *Pollock v. Horn,* 13 Wash. 626, but the statutes of that state specially provide, " in all judgments against such ward the execution shall be against the property of the ward only," thus impliedly recognizing the propriety of such procedure. The same distinction exists in *Peters v. Townsend,* 93 Ark. 103, also cited. The other cases cited by the defendants are not in point.

We conclude that the judgment of the district court is erroneous, and the same is reversed, with instructions to recall the execution and grant the injunction as prayed.

REVERSED