IN RE ESTATE OF CHRISTOPHER O'BRIEN.

MARGARET O'BRIEN, ADMINISTRATRIX, APPELLANT, v. D. W. SPERLING, GUARDIAN, APPELLEE.

FILED NOVEMBER 21, 1907.    No. 14,947.

1. Guardian and Ward: LOANS. Section 27, ch. 34, Comp. St. 1907, requires a guardian to apply to and receive from the county court an order authorizing him to loan the funds of his ward. If he loans his ward's funds without such authority, and a loss ensues, he is liable therefor.

2. ———: ———. The personal direction and supervision of the county judge in making loans for a guardian is not equivalent to an order of the court authorizing the loans.

3. ———: ———: Annual Reports: Approval. The approval by the county court, without notice to those interested, of the usual annual reports of a guardian, wherein he reports loans of his ward's funds without an order of the court, is not equivalent to an order of the court authorizing the guardian to make such loans.

Appeal from the district court for Dawes county: William H. Westover, Judge. *Reversed with directions.*

*Allen G. Fisher* and *F. O'Linn,* for appellant.

*A. W. Crites, contra.*

Good, C.

This is an appeal involving the final settlement of a deceased guardian's account. It originated in the county court of Dawes county, Nebraska. Christopher O'Brien was the guardian of two minors. Several years after his appointment he died, and his widow was appointed administratrix of his estate. D. W. Sperling was appointed as guardian of said minors to succeed to the trust of the deceased guardian O'Brien. At the instance of the newly appointed guardian, the administratrix of the deceased guardian was cited by the county court to make a final report on behalf of the deceased guardian. Such a report was filed, and thereupon exceptions were taken to certain items of credit· in the report. Hearing was had in the county court, and the final report made by the administratrix was in all things approved, and the exceptions were overruled. Thereupon the new guardian, without giving any appeal bond, appealed to the district court. There the administratrix of the deceased guardian moved to dismiss the appeal, because no undertaking for appeal had been given by the guardian. This motion was overruled. No new pleadings were filed in the district court, and a hearing was had in the district court upon the report and ex-

ceptions that had been filed in the county court. The district court sustained certain of the exceptions and overruled others. The administratrix of Christopher O'Brien, deceased, appeals to this court.

The first contention is that the district court was without jurisdiction, because the guardian appealing from the county court did not enter into an appeal undertaking, and that the district court erred in refusing to dismiss the appeal for the failure to give such an undertaking. Section 44, ch. 20, Comp. St. 1905, relating to appeals from the county court, among other things, provides that an executor, administrator, guardian or guardian *ad litem* shall not be required to enter into any bond in order to enable him to appeal. The appeal in this case was on behalf of the estate of the minor wards, and the guardian was appealing in his trust capacity, as guardian, and under this section of the statute no bond was required in order to permit him to appeal. The objections that the district court was without jurisdiction and that it erred in refusing to dismiss the appeal are without merit.

The next question, and the principal one in issue in the case, arises out of this state of facts: Christopher O'Brien, the first guardian, soon after his appointment received a considerable sum of money for his wards. Among other investments that he made with the trust funds were two loans upon real property in the city of Chadron. One was made to Shelton for $750, and the other to Chapin for $500. The one for $500 to Chapin was secured by a third mortgage upon hotel property, and the one to Shelton for $750 was secured by a first mortgage upon a building called the "Packing House," but there seems to have been a considerable amount of unpaid taxes upon this property. No formal application was ever made to the county court to authorize these investments, and no order of the county court was ever made directing or authorizing the investment of the trust funds in these mortgages. All the mortgages on the Chapin property were foreclosed in one action, but the property failed to bring sufficient to pay more than

the first mortgage, and there was a total loss of the trust funds loaned upon the Chapin property. Interest was paid for a time on the Shelton mortgage, but the mortgagors failing to make further payments, O'Brien procured a conveyance of the premises to him as guardian. Several items of expense for insurance, taxes and repairs upon this property were incurred, all of which items, together with said loans, were in the credit column of the final report of the guardianship filed by the administratrix of the deceased guardian. The newly appointed guardian made objection to the items of the two loans above mentioned and of the expenses incurred for taxes, insurance and repairs upon the property so taken over, and took exceptions thereto. The district court disallowed these items upon the ground that the loans had never been authorized by the county court, and ordered that the account be restated so as to charge the former guardian in said account with each of the items of $750 and $500 for the loans, and the items of expense, aggregating $107.36, together with interest thereon.

The appellant contends, first, that no order of the county court is necessary to authorize a guardian to invest trust funds, that it is only necessary that he should act with good faith and prudence in making investments, and that, if a loss results from loans thus made, without fault of the guardian, he is not chargeable with such loss; secondly, that the county judge orally and personally directed and supervised the making of the loans in question, and that the guardian reported the loans in his annual reports, which were approved by the court, and that these acts were equivalent to a prior order of the county court to make the loans in question. In many jurisdictions it has been held, in the absence of a statute requiring it, that a guardian is not required to apply to the court making his appointment for authority to invest funds, and that he will be protected if he acts in good faith and exercises that caution and prudence that is usually exercised by ordinarily prudent persons. In those states where a statute requires the guard-

ian to apply to and obtain the authority of the court before making the investment, it has been held that the guardian is liable for a loss if he makes the investment without proper authority, and that good faith and care and prudence will not protect him.

Section 27, ch. 34, Comp. St. 1907, is in the following language: "The courts of probate in their respective counties, on the application of a guardian, or of any person interested in the estate of any ward, after such notice to all persons interested therein as the court shall direct, may authorize or require the guardian to sell and transfer any stock in public funds, or in any bank or corporation, or any other personal estate or effects held by him as guardian, and to invest the proceeds of such sale, and also any other moneys in his hands, in real estate or in any other manner that shall be most for the interest of all concerned therein, and the said court may make such further orders and give such directions as the case may require for managing, investing, and disposing of the estate and effects in the hands of the guardian." This section of the statute was before this court for construction in the case of *Hendrix v. Richards*, 57 Neb. 794. It was there held that a transfer of the personal property of a minor by a guardian must be authorized or directed by the proper court of probate. In that case a guardian, who held a note and mortgage for his ward, resigned the guardianship, retaining the note and mortgage, and delivered to his successor a sum of money in lieu of the note and mortgage as a consideration therefor. A subsequent owner of the land mortgaged paid the amount of the mortgage to the former guardian, but previous to such payment had caused the probate records to be searched and found that no order had been made authorizing the sale and transfer of the note and mortgage. It was held, in an action by the administrator of the deceased minor to foreclose the mortgage, that the foregoing facts constituted no defense. A careful examination of this section of the statute, above quoted, shows that it applies to the invest-

12

ment of any moneys in the hands of the guardian in real estate or in any other manner that shall be most for the interest of all concerned therein. If it is necessary for a guardian to have the authority of the probate court to make a valid sale or transfer of any of the personal property of his ward, then it would seem, under this section of the statute, to be necessary to have the authority of the county court in order to invest the funds of his ward's estate.

The evidence discloses that the county judge advised and acted for the guardian in making the loans in controversy, that he made the abstracts of title and drew the papers. Appellant contends that this is sufficient compliance with the statute. It is apparent that the action of the county judge in advising the loans was based upon his own knowledge and his own judgment as to the value of the property and the desirability of the loans, and possibly might have been influenced by the fact that he was receiving compensation for performing this work. Reference to the section of the statute above quoted will disclose that it was the intention of the legislature that there should be a hearing before the court and notice given to those interested, that an investigation as to the desirability of the proposed loans should be had before the court, that evidence might be taken upon this question of those qualified to give an opinion, and that the court after hearing the evidence should render a judicial act in directing or refusing the order to make the loans. In the present instance, the county judge acted as a broker for the guardian and did not act in a judicial capacity, and his personal acts in advising and directing the loans are not equivalent to a judicial order. A county judge should not counsel or advise any litigant in his court in any matter which the statute commits to him for judicial action.

The question next arises as to whether or not the approval by the court of the annual reports of the guardian, in which were disclosed the loans in controversy, is equivalent to a prior authorization by the court. It appears

that the reports filed were the usual annual reports of the guardian, that no hearing was had upon such reports, that no investigation was made, and that no notice was given to any one interested in the estate of the filing of the reports or the approval thereof by the court. We do not wish to be understood as holding that the court might not, upon a proper application and hearing thereon after due notice, make such an order as would be equivalent to a prior authorization. But, so far as appears in this case, the approval of these reports was *ex parte*. It has been held by this court in *Bachelor v. Schmela*, 49 Neb. 37, that a substantial difference exists between the final settlement of the accounts of an executor, administrator or guardian and those made annually or at stated periods. A final settlement is made pursuant to notice to persons interested in the estate, is in the nature of a judgment, and is conclusive as to all matters included therein until reversed or set aside in a direct proceeding, or impeached on account of fraud. But an interlocutory, *ex parte* accounting is subject to re-examination so long as the administrator's accounts remain unsettled. The approval of the guardian's report was, therefore, not equivalent to a prior authorization.

The action of the district court in ordering the guardian's account surcharged with the amounts of the loans should be affirmed. But we think that complete justice requires that the guardian's account should be surcharged with the items of the two loans, together with interest thereon from the time they were made at 7 per cent. per annum, and his account should be surcharged with the items of expense for taxes, insurance and repairs upon the property, together with interest thereon at the rate of 7 per cent. per annum from the date of each item. Upon the other hand, it appears from the record that the guardian collected some interest upon these loans and some rents from the property, with which he is charged in the account. From an examination of the record we are unable to ascertain the exact amount of these items. He is

entitled to have the present account credited with the amount of these items. It would be neither equitable nor just that the estate of the minors should hold the guardian liable for the amount of these loans and the interest thereon, and at the same time retain any of the benefits arising from these loans.

We recommend that the cause be remanded to the district court, with directions to ascertain the amount of the items of rent and interest, with which the guardian stands charged in the account, and to enter judgment in conformity with the views herein expressed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, with directions to the district court to ascertain the amount of the items of interest and rents and to enter judgment in conformity with this opinion.

REVERSED.