[File No. 6182.]

LEONE KILBY, Respondent, v. C. W. BURNHAM, as Guardian of the Estate of Leone Kilby, a Minor, Appellant.

(256 N. W. 522.)

Opinion filed August 16, 1933.   On Rehearing October 4, 1934.

*H. E. Rittgers* and *James Morris,* for appellant.

*Aloys Wartner,* and *W. E. Matthaei (Hoopes & Stevens,* of counsel) for respondent.

BIRDZELL, J. This is an appeal from a judgment entered in the district court of Foster county, charging the appellant with the amount of money he had received as guardian of a minor, the respondent, and disallowing his final report. The matter was heard in district court on appeal from the county court. The facts essential to an understanding of the issues presented here for decision may be stated as follows:

Leone Kilby, a minor, and her mother were the owners of the proceeds of a death claim arising on account of the death of the father and husband. The proceeds were in Canada and in order to obtain them it was necessary for a guardian to be appointed for the minor. The appellant was appointed such guardian on April 13, 1917, and in September, 1917, received a Canadian draft for $3,947.59, the net amount of the ward's share of the claim. It appears that the guardian, the mother of the ward and the county judge had some discussion concerning the disposition of the money, as a result of which it was deposited in the Commercial State Bank of Carrington. A year later the guardian made a report showing the receipt of the proceeds and showing that it had been placed on time certificate of deposit in the Commercial State Bank at $5\frac{1}{2}$ per cent interest, netting $217.12, with which the guardian charged himself. The report showed expenditures from this fund by setting apart $150 for the maintenance of the ward which had been paid out at the rate of $12.50 per month; also, guardian's fee of $25. Under the heading "Affairs of Said Estate" was written in this report "Above balance of $3,989.71 has been deposited with Commercial State Bank on Time Deposit for one year with interest at $5\frac{1}{2}\%$." The report is endorsed "Allowed on the 9th day of September, A. D. 1918," and signed by the county judge. Six similar reports were made for the following years, five of which were allowed. The report for the year 1923 showed certificates of deposit in the Commercial State Bank

amounting to $4,308.35, and contained the following notation: "The foregoing (certificates) of deposit were issued on the dates they bear by the Commercial State Bank of Carrington, North Dakota, which closed its doors in March, 1923, and which now is in the hands of L. R. Baird, as receiver." The report of the following year showed the same condition except for the receipt of $444 as a 10 per cent dividend from the Depositors Guaranty Fund. These accounts were not allowed and proceedings were instituted in county court looking towards the removal of the guardian and charging him with the amount of the funds which had come into his hands and had been so disposed of. The only question for decision is whether or not the guardian is personally chargeable.

The appellant contends that the deposit by the guardian in the circumstances shown did not constitute an investment within the meaning of § 8912, Compiled Laws of 1913; that the failure of the guardian to procure a written order authorizing the deposit does not render him liable inasmuch as the record shows the deposit was made under the direction of the court; that the approval of the annual reports was in effect an approval of the prior acts of the guardian in depositing the funds, and if any written order of approval is required it should have been entered by the county court nunc pro tunc.

The placing of the money in the bank on time certificates was not a mere deposit pending investment but was itself an investment. Corcoran v. Kostrometinoff (C. C. A. 9th) 164 F. 685, 21 L.R.A.(N.S.) 399; Baer's Appeal, 127 Pa. 360, 363, 18 A. 1, 4 L.R.A. 609, 611; Cronk v. American Surety Co. 208 Iowa, 267, 225 N. W. 454 (deposit in savings account an investment); § 63, Woerner, Guardianship.

Section 8912, Comp. Laws of 1913, provides: "The county court, on the application of a guardian or any person interested in the estate of any ward after such notice to persons interested therein as the judge shall direct, may authorize and require the guardian to invest the proceeds of sales and any other of his ward's money in his hands in real estate or in any other manner most to the interest of all concerned therein; and the court may make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects as the circumstances require."

Similar laws exist in many of the states and the above statute is

practically identical with those of Arizona, California, Idaho, Montana, Oklahoma, South Dakota, Utah and Wyoming. See 2 Ross, Probate Law & Pr. § 675. Where a statute makes provision for the guardian to act in making an investment under the direction of the court, the guardian is relieved from personal liability where he so acts, as it could not be assumed that he was to be charged with personal liability for carrying out the directions or orders of the court under which he is acting. And the statute is generally so construed. See Brave Bull v. Ordway, 57 N. D. 344, 221 N. W. 780; Re Carver, 118 Cal. 73, 50 P. 22; Re Schandoney, 133 Cal. 387, 65 P. 877; Ross, Probate L. Pr. supra. .

It is admitted the record does not show that any written application was ever made by the guardian for an order of investment or any notice served on any person interested in the estate of the ward. Whether notice to any particular person is a prerequisite to a valid order under this statute, in view of the fact that the term "person interested" is not defined or the manner of notice prescribed (see Re Schandoney, supra), we need not here determine. In calling attention to this state of the record it is not intended to imply that there was any absence of frankness or any concealment on the part of the guardian with respect to the investment in question. While the county judge had died before the controversy arose, the undisputed evidence shows that the matter of the investment was informally talked over between the county judge, the mother of the ward and the guardian. The fact is no order was obtained, and this circumstance alone is fatal to the contention of the guardian unless the allowance of the annual reports and accounts amounts to an authorization or direction. We are of the opinion that full effect cannot be given to the policy of the statute in question by holding a verbal direction or order sufficient to protect the guardian against personal liability or by holding that an approval and allowance of an annual report in which a specific investment may be shown amounts to a direction or order for such an investment or the continuance of the same. In the case of Carlysle v. Carlysle, 10 Md. 440, the court had occasion to consider a statute authorizing the orphans' court to direct or control investment of funds by guardians. It was said in the opinion that the statute afforded the guardian ample and convenient means of securing himself from loss, but in considering whether or not

the guardian would be permitted to negative personal liability by showing parol authority from the orphans' court, the court said (page 447 of 10 Md.):

"The adoption of the appellant's doctrine, in such a case as this, would establish a most dangerous principle. Under such a rule, unsafe, indeed, would be the rights of persons, in regard to property, when those rights have been acted upon by these very important courts. We call them important, because, the swift messenger of death is annually bringing within their jurisdiction large amounts of personal property.

"We have seen no authority, and can perceive no good reason, for admitting, that the orders of these courts may be merely verbal, and may be proved without any written evidence. Such a doctrine we consider at variance with the law creating and regulating the courts, contrary to the authorities in reference to courts of similar character, and contrary to sound legal principles.

"The law providing for the organization of our orphans' courts, certainly makes them so far courts of record as to require, that their proceedings shall not rest in parol, but shall be reduced to writing. . . ." See also Re O'Brien, 80 Neb. 125, 113 N. W. 1001.

This is sound policy as well as good law. We think an order or direction within § 8912, Compiled Laws of 1913, to protect the guardian against personal liability, must be a written order or direction.

There only remains to consider whether or not the indorsement of allowance of the annual reports amounts to a written order or direction. The settlement of the annual account is not a final determination. See Woerner, Guardianship, supra. Primarily, such a report is for the purpose of enabling the court to determine prima facie how affairs of the estate are progressing. In approving or allowing such a report the court doubtless considers whether or not the rights of the ward are in danger of being sacrificed by any action that has been taken, but in considering this matter the court would take into consideration the sufficiency of the guardian's bond. Unless it were drawn to the attention of the court that the guardian desired a specific approval of a particular investment, the court would have no occasion to consider that in allowing a report it was withdrawing any investments shown therein from the protection of the guardian's bond. Rather, in approving or allowing the report, it is acting in light of the protection which has

already been secured to the ward through the responsibility of the guardian and his bondsmen. We are clearly of the opinion that it cannot be said an order of allowance and approval of an annual account amounts to a direction or order for the investment of the funds of the ward in the manner in which the account may indicate they are invested. See Sherry v. Sansberry, 3 Ind. 320; Re O'Brien, 80 Neb. 125, 113 N. W. 1001, supra; Nagle v. Robins, 9 Wyo. 211, 62 P. 154, 796.

The appellant in the instant case is an attorney at law and in the proceedings in question, we are pleased to note, there is no suggestion that he has not acted in the utmost good faith. The record shows, too, that persons of considerable means and persons who have conducted their business with frugality in the vicinity of Carrington for many years and who are regarded as men of good judgment, sustained losses on account of deposits in the bank in question comparable to the loss in the instant case. So, the only failure of judgment or care in any way chargeable to the appellant is the failure to take those technical steps that would have protected him against personal liability and in this he is rather to be commended than condemned.

The judgment must be affirmed. It is so ordered.

NUESSLE, Ch. J., and BURKE, CHRISTIANSON and BURR, JJ., concur.

MOELLRING, J. (On rehearing). Upon a rehearing of this matter we are agreed that the determination heretofore made on the appeal should stand, except as to interest. The defendant's liability is predicated upon the fact that he did not procure a written order from the court before depositing the funds in the bank. The deposit was made in such manner that it drew interest, which, in legal effect, made the transaction an investment of the funds.

The estate profited by the transaction until the bank closed. Defendant's liability is technical, as indicated in the original opinion in this case, and had he procured a written order from the court instead of an oral one, he would not be required to respond in damages.

The liability of defendant is founded upon the fact that he made the investment of the funds of the estate, and without authority; and the

conclusion, therefore, is that he should not have made the investment. In determining the extent of the damages sustained by the estate, it is necessary to ascertain what would have been the status of the estate if he had not made the investment. If the investment had not been made, the funds would not have earned any interest, in which circumstance the defendant would not be required to account for an item of that character. It logically follows, therefore, that defendant cannot be liable for interest unless founded upon some other basis or reason, and we do not find any other basis or reason in the record.

This is not a case where the guardian has negligently failed to invest the funds of the estate when he should have done so, but his liability is based upon his failure to account for funds received. His liability for interest, however, would exist after demand was made upon him for a return of the funds, and the first indication in the record of such fact is when the county court made its order and judgment requiring him to pay over the funds.

This case is remanded to the trial court with instructions to modify the judgment in accordance with this opinion, and, when so modified, the judgment is affirmed.

BURR, Ch. J., and NUESSLE, BURKE and CHRISTIANSON, JJ., concur.