[Crim. No. 2198.  First Dist., Div. One.  Aug. 27, 1941.]

In re STELLA CARBONI, on Habeas Corpus.

606

Ben B. Jones for Petitioner.

Ralph E. Hoyt, District Attorney (Alameda), and J. F. Coakley and Cecil Mosbacher, Deputies District Attorney, for Respondent.

PETERS, P. J.—Petition for a writ of *habeas corpus.* Petitioner has been adjudged in contempt and sentenced to one day in jail and a $500 fine for wilfully refusing to comply with an order of the juvenile court requiring her to partially reimburse the county for the support of her minor child, a ward of the juvenile court.

The facts as disclosed by the petition and return thereto are as follows: In 1932 the husband of petitioner secured a divorce from her on the ground of cruelty. The custody of three minor children of the marriage was awarded the father. One of these children was Jenny Carboni. In 1936 the child, Jenny, was declared a ward of the juvenile court on the ground that she was in danger of leading an immoral life. By this determination, custody of Jenny was taken from the father and she was committed to the custody of the probation officer. In September of 1940 the father was appointed guardian of the person and estate of Jenny. The child continued, however, to live in a foster home as the ward of the juvenile court. The child, in 1939, received a legacy of $1,000 from her maternal grandfather. In October of 1940 the juvenile court made an order directed against both parents for the reimbursement of the county for its expenditures. This order required the father to pay $15 a month as guardian of Jenny's estate, and $2.50 per month from his own earnings, and also required petitioner to pay $2.50 per month to the county, for the purpose of reimbursing the county. This order recited that, "the attorneys for said Stella Carboni in this matter, have consented to abide by any reimbursement order that the court may order," and further found that, "the father and mother are each able to reimburse in part for the support and maintenance of said ward to the extent of $2.50 per month reimbursement from each parent." Thereafter, on the 8th day of November, 1940, the juvenile court made another order directed solely to petitioner, again requiring her to partially reimburse the county for the support of Jenny by paying $2.50 each month. Again the court found that, "the mother of said ward is able to reimburse in part for the support and maintenance of said

ward.'' Apparently this second order was made necessary because petitioner repudiated the agreement of her counsel, and she was apparently not present at the hearing when the October order was made. At the hearing on the present contempt proceeding, she likewise denied that she was present when the order of November 8, 1940, was made, but the recitals in that order, as well as the evidence of the court attachés and juvenile court officials, support the finding that she was present. The record shows that the county has expended approximately $1,200 for the support and maintenance of Jenny, and that it has been reimbursed only to the extent of $117.50, entirely from the father and from the estate of the ward.

Petitioner did not comply with the order of November 8, 1940. In April of 1941 the deputy probation officer filed an affidavit for an order to show cause why petitioner should not be punished for contempt. The order to show cause duly issued, and on May 6, 1941, after a hearing, the juvenile court found petitioner guilty of contempt. By its order the court found that petitioner has an income of $50 per month from a trust created by the will of her father; that she has a life estate in the home where she is living; that she has a legacy payable to her in October, 1943, of $4,600, contingent only upon her living to that date; that she is able-bodied and capable of earning a reasonable amount; that petitioner refused and failed to comply with the order of reimbursement heretofore referred to; that she ''has been at all times since the said order was made and now is able to comply with said order''; that ''Stella Carboni has now, and since the 8th day of November, 1940, has had the ability to reimburse the County of Alameda in the sum of $2.50 per month''; that no sufficient reason has been shown to excuse the failure. The court, therefore, found petitioner to be in contempt and ordered that she be imprisoned in the county jail for one day, and fined her the sum of $500.

Petitioner urges five contentions in support of her position that the juvenile court was without jurisdiction to adjudicate her in contempt.

1. She first urges that the court was without jurisdiction because the evidence does not show ability to pay. Both the order requiring petitioner to reimburse the county and the order of commitment contain a finding that she has the ability to pay $2.50 a month. Under such circumstances,

this court has no power on *habeas corpus* to consider the state of the evidence. This precise point has been recently considered by this court in the case of *In re Carpenter*, 36 Cal. App. (2d) 274 [97 Pac. (2d) 476]. There the petitioner was adjudged guilty of contempt for failing to pay $20 per month towards the partial support of her five minor children, all wards of the juvenile court, as ordered by the juvenile court. The order recited that Mrs. Carpenter was financially able to comply therewith. She refused to comply with the order and was adjudged in contempt. The commitment recited her ability to pay. On *habeas corpus* it was urged that these findings were totally unsupported by the evidence. It was held that in support cases of this nature, on *habeas corpus*, the adjudication of ability to pay is conclusive, and the sufficiency of the evidence cannot be considered. (See, also, *Ex parte Levin*, 191 Cal. 207 [215 Pac. 908]; *In re Wilson*, 123 Cal. App. 601 [11 Pac. (2d) 652]; *Ex parte Von Gerzabek*, 63 Cal. App. 657 [219 Pac. 479]; *In re Gutierrez*, 46 Cal. App. 94 [188 Pac. 1004].) These cases are decisive on the point under discussion.

2. Petitioner next contends that, inasmuch as she was legally deprived of the custody of Jenny by the divorce decree, and by the order of the juvenile court making Jenny a ward of that court, there is no legal obligation on her part to support her child. This contention, if approved, would mean that a mother who had been deprived of the custody of her child because of her wrongful conduct, could not be compelled to assist the county in supporting the child, even though able to pay for such support. Petitioner relies on the general principle declared in § 196 of the Civil Code that: "The parent entitled to the custody of a child must give him support and education suitable to his circumstances. . . ." This rule has been applied in a variety of situations, some of which appear in the several cases cited by petitioner. (*Ex parte Miller*, 109 Cal. 643 [42 Pac. 428]; *Selfridge* v. *Paxton*, 145 Cal. 713 [79 Pac. 425]; *Pacific G. D. Co.* v. *Industrial Acc. Com.*, 184 Cal. 462 [194 Pac. 1, 13 A. L. R. 725]; *Matter of Ross*, 6 Cal. App. 597 [92 Pac. 671]; *McKay* v. *McKay*, 125 Cal. 65 [57 Pac. 677]; *Matter of Mc-Mullin*, 164 Cal. 504 [129 Pac. 773].) These cases hold that a parent who is awarded the care and custody of the minor children in a divorce action, in the absence of an order for

support, may not maintain an action against the other parent for money expended in the caring for the children, and, further, that a third person who furnishes necessities to minors awarded to one parent cannot, in the absence of an order for support, hold the other parent legally responsible for the cost of the necessities. These cases are not in point in this proceeding. None of them passed on the interpretation of the provisions of the juvenile court law. The question here presented is whether, under that act, not the provisions of the Civil Code, a parent deprived of custody can be compelled, by the juvenile court, to contribute to the support of such child. This precise question has been passed upon by the Supreme Court in *Svoboda* v. *Superior Court*, 190 Cal. 727 [214 Pac. 440]. In that case, custody of a minor child had been awarded the mother by a divorce decree which made no provision that the father contribute to the support of the child. Thereafter, the minor was declared a ward of the juvenile court and committed to the Preston School of Industry. Thereafter, the father was directed to reimburse the county in the amount of $20 per month. He sought annulment of this order on *certiorari*. He contended, as does petitioner here, that, since he had no legal right to custody, and, since no support order had been made in the divorce proceedings, he could not be compelled to reimburse the county. He, as does petitioner here, relied upon the provisions of § 196 of the Civil Code. The Supreme Court held that the provisions of the juvenile court law (Stats. of 1921, p. 798, Deering's Gen. Laws, 1931, Act 3966), and particularly § 11 thereof, superseded § 196 of the Civil Code as to juvenile court proceedings, and that under § 11 either parent could be compelled to reimburse the county even though not entitled to the custody of the child. Section 11 of the act is now substantially § 860, et seq., of the Welfare and Institutions Code. Section 860 of that code provides that if it is necessary to provide for the support and maintenance of a ward of the juvenile court the order shall direct that the whole of such expense up to $20 per month (and not to exceed $35 per month) shall be paid from the county treasury. Section 862 reads as follows:

"If it is found that thirty-five dollars a month is insufficient to pay the whole expense of support and maintenance of such ward or other minor person . . . the court may order and direct that such additional amount as is necessary shall

be paid out of the earnings, property, or estate of such ward or such other minor person, *or by the parents or guardian of such ward or such other minor person,* or by any other person liable for his support and maintenance, to the probation officer, who shall in turn pay it to the person, association, or institution that under court order is caring for and maintaining such ward or other minor person." (Italics added.)

Section 863 provides:

"At the time of making any order providing for the support and maintenance of a ward of the juvenile court or such other minor person, the court shall inquire into the earnings, property, or estate of such ward or other minor person, *and into the ability of the parents* or guardian of such ward or other minor person, or of any other person liable for his support and maintenance, to pay for the expense of his support and maintenance." (Italics added.)

Section 864 provides:

"If the court finds that there are earnings, property, or estate of such ward or other minor person, sufficient therefor, *or that the parents or guardian of such ward or other minor person, or other person liable for the support of such ward, or other minor person is able to pay, either in whole or in part, for the expense of his support and maintenance,* the court shall further order, and direct that the county be reimbursed, in whole or in part, for its expense of support and maintenance of him *from his earnings, property, or estate, or by his parents, guardian, or other person liable for his support.* For the purpose of such reimbursement the court may order payments to be made to the probation officer *from such earnings, property, or estate, or by such parents, guardian, or other person.* The amount of these payments shall be determined by the court and the probation officer shall, in turn, pay them over to the county treasurer on account of such reimbursement." (Italics added.)

In the Svoboda case, *supra,* after analyzing substantially the same provisions found in § 11 of the old statute, the court held that, where a minor has been declared a ward of the juvenile court and the county has assumed the cost of such child's support, by proper order "the court may direct the parent, or parents, of such ward, financially able to do so, to reimburse the county, regardless of whether or not he,

she, or they may have been deprived of the custody of the child in any previous divorce proceeding. The words in the section, 'or other person liable for the support and maintenance of said ward,' do not modify or relate back to the words 'parent, parents, guardian of such ward.' They relate to a class of persons, such as those *in loco parentis* to the ward, as trustees of a fund for the support of the minor, or persons who may have adopted the child. It follows, therefore, that the respondent did not act in excess of its jurisdiction in requiring the petitioner to reimburse the county of Alameda for the expense of the support and maintenance of his minor child at the Preston School of Industry.'' (190 Cal. at p. 731.) The rule of this case is decisive of the contention under discussion.

3. The next contention of petitioner is somewhat related to the point last-discussed. It is urged that the primary duty of support is on the father who was awarded custody by the divorce decree; that the mother, who has been deprived of custody, is not liable for the child's support in the absence of a finding that the father of the ward is not able to reimburse the county for the support of the ward; that no such finding was made in the present case.

It should be noted that the father of Jenny was not overlooked by the juvenile court. In the reimbursement order of October 11, 1940, it is found "that the father and the mother are each able to reimburse in part for the support and maintenance of said ward to the extent of $2.50 per month reimbursement from each parent.'' By the same order the father, as guardian of the estate of the ward, was required to reimburse the county to the extent of $15 a month from the estate of the ward. Whatever may be the general law on such matters, the present case is not governed by the general provisions of the Civil Code, but by the specific provisions of the Welfare and Institutions Code. The sections of that code, above-quoted, confer upon the juvenile court broad powers of discretion. That court is required to investigate into the ability of the parents of the ward to reimburse the county. No distinction is made between the duty of the father or the mother to reimburse the county. Under those sections, the juvenile court is empowered to investigate each case on its merits, and to determine whether the father or the mother, or the estate of the ward, or any two or all of them are able financially to reimburse the county in whole

or in part. The court is empowered to compel the father, or the mother, or the estate of the ward, or any two or all three of them, to contribute. The mere fact one may be better able to pay than the others does not prohibit the court from compelling the others to pay to the extent of their ability. Obviously, the relative financial abilities of the persons involved is a factor that should be, and in this case was, considered by the juvenile court in making its order. But the mere fact that no express finding is made that the father is unable to reimburse the county does not relieve the mother from her obligation, imposed by the provisions of the Welfare and Institutions Code, to support her child. That is the only reasonable conclusion that can be drawn from the code sections as interpreted in *Svoboda* v. *Superior Court, supra*.

4. The fourth contention of petitioner is somewhat similar to the point last-discussed. It is urged that the court was without jurisdiction to order the mother to partially reimburse the county to the extent of her ability in the absence of a finding that the father of the child, as guardian of the estate of the ward, was not able to fully reimburse the county out of the estate of the ward. The record shows that in December of 1939 Jenny received a cash legacy in the sum of $1,000. How much remains of that legacy does not appear.

Petitioner places her main reliance on two sections of the Probate Code. Section 1502 provides that every guardian must apply the income of the ward's estate to the suitable support and maintenance of the ward. Section 1504 provides that if a minor, having a father living, has property, the income of which is sufficient for his support and maintenance in a manner more expensive than the father can afford, the expenses of such minor may be defrayed out of the income of the property.

These sections have no application to the present case. The law is well-settled that the primary duty to support a minor rests upon his parents, and that the estate of the minor can only be resorted to where the parents are unable to fulfill the obligation in whole or in part. (*In re Keck*, 100 Cal. App. 513 [280 Pac. 387] ; *Fagan* v. *Fagan*, 43 Cal. App. (2d) 189 [110 Pac. (2d) 520].) Moreover, as already pointed out, the controlling statutory law is to be found in

the Welfare and Institutions Code, and not in the Probate or Civil Codes. The Welfare and Institutions Code sections, referred to above, confer upon the juvenile court discretionary power to determine what share of the expense of his support should be borne by the parents, or either of them, and what share should be borne by the estate of the ward. Everything that was said in discussing point three is equally applicable to the point now under discussion. The point is without merit.

5. The last major point urged by petitioner is that the court was without jurisdiction to punish disobedience of the reimbursement order by contempt proceedings. It is contended that the sole method of enforcement is by execution. Section 579 of the Welfare and Institutions Code provides that: "Any disobedience or interference with any order of the juvenile court or of the judge thereof constitutes a contempt of court." Petitioner contends, however, that that section has no application to the enforcement of reimbursement orders because § 867 of the code permits such orders to be enforced by execution. Obviously, the two remedies are not mutually exclusive, but are cumulative. Similar statutes have uniformly been interpreted as creating cumulative remedies. (*Ex parte Karlson,* 160 Cal. 378 [117 Pac. 447, Ann. Cas. 1912D, 1334]; *In re Wilson,* 123 Cal. App. 601 [11 Pac. (2d) 652].)

The petitioner also argues that the juvenile court abused its discretion in imposing a fine of $500. Even if it were the fact that the size of the fine was out of proportion to the seriousness of the offense, the court had jurisdiction to impose a fine, and the reasonableness of that fine cannot be passed on in a *habeas corpus* proceeding.

The writ is discharged and the prisoner remanded.

Knight, J., and Ward, J., concurred.